UNITED STATES, Appellee

v

ROBERT DANIEL WARREN, Lieutenant, U. S. Navy, Appellant

6 USCMA 419, 20 CMR 135

*Fred W. Shields,* Esq., argued the cause for Appellant, Accused. With him on the brief were *Calvin H. Childress,* Esq., and *Lieutenant Harold Hoag,* USN.

*Captain James A. Turley,* USMCR, argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

### I

The accused was charged with two separate offenses of sodomy and two other crimes of taking immoral, improper, and indecent liberties with intent to arouse and satisfy his sexual desires. He was convicted on the two sodomy specifications and one indecent liberty charge, and was found not guilty of the second immoral and improper act. A sentence to dismissal, confinement at hard labor for one year and partial forfeitures followed, and a board of review affirmed the findings and sentence with one member dissenting. We granted the petition of the accused to determine the single question of whether the evidence of other similar offenses was improperly admitted in evidence.

Chronologically, the alleged offenses were committed in the following order: Sodomy with one Durant on March 29, 1952; lewd acts with one Swailes on successive days, January 2 and 3, 1953; and sodomy with Swailes on January 3, 1953. For reasons which are not now material to this decision, the accused was not tried until January 21, 1954.

This officer's difficulties started in March 1952, when he was an instructor of a Naval ROTC unit at an eastern university. One of his students attending that institution lodged a complaint against him, alleging the crime of sodomy. Charges were preferred and investigated, and the accused was transferred to the Fifth Naval District, Norfolk, Virginia. Certain administrative proceedings were had, but a trial was not held at that time. When complaint was made of the alleged offenses committed in 1953, the March 1952 offense was revived, and it, together with the latter offenses, became the basis for the present prosecution. We need not relate all of the disgusting details of the particular crimes, but sufficient facts must be stated to show the predicate for our subsequent holding that the previous offenses were inadmissible in evidence.

We first relate the testimony as given by the witnesses for the Government. In connection with the first offense, it appears that on March 29, 1952, the victim, Durant, met the accused at a cocktail party and they struck up a speaking acquaintance. Durant had consumed too much intoxicating liquor and sometime during the course of the evening, he became nauseated and suggested that he and accused go for a ride to obtain fresh air. After a short ride, the pair returned to the party where Durant consumed some additional liquor. At about midnight, another ride was suggested, and the two left the party for the second time. After a short journey, the accused made the improper advances which ultimately resulted in the completed act of sodomy. The accused returned to the party, while Durant proceeded to seek out and make an immediate complaint to his roommate and to the commanding officer of the Navy ROTC unit.

The Swailes incident, if it occurred, is just as repelling. On January 2, 1953, he was sitting in a bar with his shoes removed. The accused seated

**421**

himself across the booth from Swailes and for some fifteen minutes rubbed his hand up and down the calf of Swailes' leg. At approximately 2:00 o'clock in the morning, they departed from the establishment with one Huntley, whom they left at the Naval Base and the two journeyed to a home occupied by some village characters identified as "Kip and Jerry." They there occupied the same bed and the sodomy and immoral acts occurred at that time.

The accused became a witness in his own behalf, and while he corroborated many of the facts testified to by the two participants herein named, he denied all those of an incriminating nature. One of the previously identified village characters corroborated, in part, accused's version of the Swailes incident.

## II

The questioned evidence which accused asserts was inadmissible and distinctly prejudicial deals with three unrelated transactions. The first incident was an act of sodomy committed by the accused with one Hoblitzell. The second transaction involved the performance of indecent acts with the same person, and the third impropriety was impersonating a woman and embracing a man. Generally, Hoblitzell testified that he met the accused in a Charleston bar in the summer of 1949; that he accompanied the accused on an automobile ride; that the accused fondled his person and, although he was drunk at the time, he "presume[d] it went on further, on into the act of homosexuality." Hoblitzell also testified that he saw the accused once again in the Fall of 1949, after meeting him in the same bar. On that occasion they went to a hotel room, but the witness stated he was not sure what happened there as he was "pretty well under the weather."

One Cisa, a civilian, testified that he knew two persons in Charleston called "Kip and Jerry"; that they had lived together in several different apartments and had acquired a house in Mt. Pleasant, South Carolina; that he had seen the accused at the various places operated by those individuals; that on one occasion in the year 1949 or 1950,

**422**

he had observed the accused impersonating a woman; and during the impersonation "[the accused] cracked a few jokes and did a little jig of some sort and embraced, took a peck or a kiss as you call it" with "Kip and Jerry."

## III

Before expressing our views on the law governing the admissibility of prior acts of sodomy, we digress ■■■■■ ■ to overrule one of the contentions asserted by the Government. To support its views, the Government argues on appeal that we must consider the evidence as being admissible because a crime involving specific intent was alleged as a lesser offense. We have considerable difficulty in determining the reasons why the original pleader drew the specifications to make a single transaction with Swailes the basis for three separate offenses. The testimony establishes that he and the accused were in a bar late in the evening of January 2, 1953, and the improper advances happening there were established to be no more than the rubbing of the victim's leg between the knee and the ankle. Nothing but preliminary acts could have been committed at that time, and the court-martial returned a finding of not guilty on that particular specification. After leaving the cafe, the two proceeded to the home of "Kip and Jerry." There certain additional advances were made and, according to the testimony of Swailes, the act of sodomy followed immediately. The evidence interpreted reasonably indicates a continuous course of sexual misbehavior from the meeting in the bar to the completed crime. The lewd and lascivious acts in the two separate specifications were no more than a prelude to, and in essence part of, the completed offense. Yet, what appears to have been one criminal transaction was partitioned into three separate stages and each stage alleged as a separate offense.

Paragraph 26b of the Manual for Courts-Martial, United States, 1951, provides that as a general policy one transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multipli-

cation of charges against one person. However, it likewise provides that there are times when sufficient doubt as to the facts or the law exists to warrant making one transaction the basis for charging two or more offenses. While, as previously mentioned, we are unable to ascertain the true motive prompting the pleader to allege the one transaction as three distinct offenses, we do not believe he could have been influenced by reasonable doubts concerning the facts of this case or the law that controls it. Because the reason is not self-evident, it is asserted by appellate defense counsel that the separate specifications were prepared as a means of permitting the Government to allege an offense based on specific intent and thereby make evidence of other similar offenses relevant as bearing on that intent. We are not prepared to accept that assertion at face value as the pleader may have had other reasons in mind. But whatever his reason, the breaking of one transaction into several sequences without evidentiary support in the record cannot be used as a vehicle for shifting the rules of evidence. It is questionable whether the testimony of the previous offenses would be admissible even were we dealing with a record which established a crime involving a specific intent, a question we need not answer, as it is certain from the evidence which is before us that there was no issue of any included offense raised reasonably by the evidence. It is possible that under appropriate pleadings and relevant factual settings, an assault with intent to commit sodomy or lewd and lascivious acts with intent to gratify sexual desires could be included offenses of sodomy, but the burden is on the Government to bring the included offenses into issue, and here we are faced with nothing but the sordid facts of the completed offense. Unless we are presented with more valid reasons than we find in this case, we are not disposed to permit the Government to allege lesser included offenses or separate offenses which arise out of the same transaction when they are not shown to serve any purpose other than to be the base for admitting testimony which would be otherwise inadmissible. It may well be that the lesser offenses in-

volving specific intent were thrown in for cautionary reasons, but unless there are facts in this record to show the probability of their commission, inflammatory evidence to establish that element is irrelevant.

The facts of this case do not bring the lesser included offenses in issue for the reason that Swailes, the victim, was the only one who testified as to the details of the crimes. The accused denied any assault of any kind, and the victim's testimony established clearly that there was only one continuous illicit relationship. It appears unlikely to us that under any interpretation of the facts, the court-martial could find reasonably that the accused made an assault upon the victim with intent to satisfy his sexual desires without finding that the act of sodomy was committed. The Government argues that the accused's intent was in issue because his plea of not guilty places in issue every material element of the offenses pleaded. Theoretically that is true, but the facts shape the issues and certainly, if testimony between the two disputants shows either a completed act or no physical contact or no attempted act, there is no substance to the argument that the court-martial might find the accused guilty of some offense sandwiched in between the greater offense and no offense. We, therefore, conclude that the only question requiring extended discussion is whether separate and prior acts of sodomy are admissible under any exception to the general rule that evidence of prior offenses is inadmissible.

IV

The authorities are legion to the effect that proof of the commission by the accused of another offense wholly unconnected with that for which he is on trial must be excluded. Tedesco v United States, 118 F2d 737 (CA 9th Cir) (1941); People v Molineux, 168 NY 264, 61 NE 286 (1901). However, the rule is subject to the exceptions, among others, that whenever motive, knowledge or intent constitutes an ingredient of the offense charged, evidence is admissible of acts or conduct of the accused which tends to establish

**423**

a common plan or scheme, or his motive, intent or knowledge, notwithstanding the fact the testimony may disclose the commission of another crime. Wood v United States, 16 Peters 342, 10 L ed 987 (1842); State v Smith, 140 Me 255, 37 A2d 246; Wigmore, 3d ed, § 302. Cf. United States v Hunter, 2 USCMA 37, 43, 6 CMR 37; United States v Thomas, 6 USCMA 92, 97, 19 CMR 218.

Although with certain sex offenses courts are inclined to be more lenient in extending the exceptions, ■ that liberality cannot be expanded to a point where every prior offense of a similar nature becomes admissible or the rule itself will disappear. In explaining his views that the admissibility of prior acts of misconduct in sex cases of the perverse type are governed by principles similar to those applied in other cases, Dean Wigmore in his works on Evidence, 3d ed, § 360, has this to say:

"*Indecent exposure, Sodomy, Bigamy, Incest, Seduction, Adultery, etc.* The same principles are occasionally applicable on charges of *indecent exposure or other lewdness,* as well as of *sodomy, bigamy,* or *enticement for prostitution,* and related offenses.

"But for the offenses of *adultery, seduction, rape under age of consent, incest,* and certain others, there is commonly no question of Intent, and the significance of prior conduct of the defendant with the woman is usually to show, not Intent, but an Emotion of lust. This is perhaps not always to be distinguished from evidence of Design; but it is best examined under the principles applicable to evidence of Emotion (*post,* §§ 398–402.)"

From the very nature of the crime charged and from our recitation of facts, it is apparent that the earlier act of sodomy committed with the witness Hoblitzell has no reasonable tendency to show any intent, plan, scheme, motive, design or knowledge on the part of the accused to commit sodomy with Swailes. The transactions are so isolated and unrelated that, at best, all that the former acts of misconduct disclose, is a possible tendency or predisposition on

424

the part of the accused to commit sexual acts of an unnatural type. If we were to admit that character of evidence, it should be done with full knowledge on our part that we are permitting highly inflammatory testimony to be admitted against an accused without any appreciable necessity therefor.

We recognize the doctrine of necessity in cases involving specific intent but we find it of doubtful ■ validity in this type of case. Sodomy belongs to a class of cases which excludes every possibility of an innocent intent. It cannot be committed through accident, misfortune or under an honest or ignorant mistake of fact. Inherent in its commission is the necessary mens rea to satisfy the requirements of criminal law. Once the act is proved, it becomes unnecessary for the Government to go further and establish by similar disconnected acts the presence of the necessary criminal intent. Other courts have given careful consideration to that concept, and we have chosen two decisions to highlight the reasons.

In People v Lonsdale, 122 Mich 388, 81 NW 277, the Michigan Supreme Court, in reversing a conviction, said:

"The prosecution introduced the testimony of a witness to show that she had applied to the respondent to have an abortion produced upon her. The testimony was very weak, and was evidently that of an unwilling witness. However, there was sufficient in it to show the purpose of the woman's visit, and that some acts were done towards the accomplishment of that purpose. The attorneys for the people justify this testimony on the ground that it tended to prove guilty knowledge or intent, and rely upon People v Seaman, 107 Mich. 348, 65 N. W. 203. This case is not within the rule there announced, or within the authorities there cited. This case does not form an exception to the general rule of evidence. Where the intent or guilty knowledge is a necessary conclusion from the act done, proof of other offenses of a similar character is inadmissible, and violates the rule that the evidence

must be confined to the issue. Upon the record, there is no room for an inference that death resulted from accident, or that the operation was performed to save the life or health of the deceased. On the contrary, if the jury found that the dying declaration of the deceased was true, the crime was complete, and the jury could not find otherwise than that it was done with guilty knowledge and intent. This testimony should have been excluded, and for this reason the conviction must be set aside."

To the same effect is the holding of the Iowa Supreme Court in State v Weaver, 182 Iowa 921, 166 NW 379, 381. In explanation of the reversal in that case, the court said:

". . . It will be observed that the statute defines the offense as 'lewd, immoral, or lascivious act upon or with the body or any part or member thereof, of a child of the age of 13 years or under, with the intent,' etc. The acts described by witness were lewd, immoral, and lascivious. Defendant sustained no relationship toward Mildred from which an innocent intent upon his part could possibly be drawn. No possible explanation consonant therewith could be offered. The act was of such an immoral, lascivious, and indecent character as to conclusively show the debased and licentious condition of defendant's mind. From the facts shown, the intent defined by the statute is not only inferable, but every other intention is necessarily excluded. The intent was inherent in the act itself, and could not have been an issue requiring other evidence to establish. The evidence offered was clearly inadmissible."

Speaking only of the crime of sodomy, 22 CJS, Criminal Law § 691(10), page 1170, has this to say:

"Where sodomy is the crime charged, evidence of prior acts of the same kind committed by accused with the prosecuting witness is admissible; but, according to some authorities, only under exceptional circumstances. Evidence that accused committed the same offense, or had improper relations, with a person other than the one named in the indictment, is as a rule held to be inadmissible, although there are instances where such evidence has been admitted for the purpose of identifying accused as the person who committed the crime charged or to show his habit, motive, and practices, or where the evidence discloses a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or offers an explanation of facts that, unexplained, would tend to discredit the evidence introduced by the state."

It is to be noted that the foregoing authority limits admissibility to exceptional cases where the parties are the same. We assume those instances fall in the well-recognized areas previously mentioned or to limited extensions where the proffered testimony shows a course of sexual behavior between the accused and the complaining witness which makes each separate and illicit act a part of their entire relationship. But, so far as we have been able to ascertain, no case goes to the extent of admitting evidence of other crimes so attenuated from the alleged offense as are those relied on in this instance. To illustrate the point, we will refer to the two lines of cases which have reached what, at first blush, may appear to be a divergency in views. We first quote from those authorities which have admitted testimony of prior acts of misconduct.

## V

In State v Badders, 141 Kan 683, 42 P2d 943, evidence of other acts of perversion was admitted to cast light on what the Kansas Supreme Court identified as motive or practice. The reasoning behind that holding is reflected in the following quotation:

"In developing the story of the offense charged from the four young men called as witnesses, it was brought out that the same offense had been committed with the same young men at different times and on some occasions outside of this state. Ap-

**425**

pellant contends this testimony was wrongfully received, especially as to those acts outside of this state, for the reason that there was no showing that they constituted crimes in the state where they were committed. This evidence was not offered to establish the commission of a crime in another state. Appellant was tried for no such crime. It was offered to show other offenses of the same kind, and, as it happened here, with the same party, to show habit, motive, and practices, as well as being a part of the story of the offense specifically charged, and was competent for those purposes. State v. Reuter, 126 Kan. 565, 268 P. 845; State v. Frizzell, 132 Kan. 261, 295 P. 658."

In People v Swift, 172 Mich 473, 138 NW 662, the Supreme Court of Michigan dealt with a variant of the problem in the following language:

"The prosecution was permitted to introduce testimony of two previous acts of misconduct between the same parties similar to the one relied on for conviction, in one of which a small dog figured as an interested spectator and to a limited degree as a participant. This is strenuously urged to have been prejudicial error under the well-settled rule that the prosecution may not prove another and distinct offense of the same kind for the purpose of rendering it more probable that he committed the offense for which he is on trial. To this rule there are numerous exceptions, one of which, long recognized and well established, is in prosecutions involving sexual offenses. The reasoning in support of that exception is significantly applicable to cases like the one before us. Here peculiar secret criminal relations are involved and testified to which, unconnected with anything leading up to them, would appear in a marked degree unnatural and incredible. The facts preceding and inducing this transaction are most essential to an understanding of the situation. Where previous acts of intercourse between the same parties are shown, it is something more than merely proving the commission of similar of-fenses—it is rather proving a repetition of the same offense between the same parties, identical in its criminal features."

The Supreme Court of Indiana in the case of Borolos v State, 194 Ind 469, 143 NE 360, permitted the introduction of evidence of separate offenses in a sex crime but gave its reasons therefor in the following language:

"In the case at bar the testimony that the offense was committed in the presence of other boys, who witnessed all the revolting details, and who shared the cigarettes and 'white mule' distributed by the defendant, but that they did not tell what they had seen until long afterward, and until the prosecuting witness had 'got it,' and had discovered that defendant had 'hurt him,' and told his mother about it, would seem almost impossible of belief without the explanation that they had a share in the shame they were concealing. These boys were shown to have been present, sharing with the prosecuting witness what defendant gave them to induce the commission of the crime, not only once but four times in succession. And we think that the evidence in question was competent for the purpose of explaining their passive participation and their silence, and to rebut an inference that the story they told was too improbable to be true. And being admissible for a proper purpose, we must assume that the trial judge who heard the evidence limited its effect to the purpose for which it was competent."

## VI

Authorities which have refused to admit evidence of similar acts of sexual perversion under an exception to the general rule have expressed different reasons for the exclusion. We have selected the following quotations to point up the rationale which causes courts to frown on its admission. On this side of the ledger, we quote first from the case of People v Wyett, 49 Cal App 289, 193 P 153, wherein it is said:

"The defendant, however, makes a

further objection to the verdict and judgment herein, based upon his contention that evidence was offered and admitted over his objection with relation to the commission of another offense by him similar to that charged in the first court in said information, but against a person other than the prosecuting witness. One Floyd Menasco was called as a witness by the prosecution, and was permitted to testify to the commission of said crime by the defendant upon his person upon a date after that upon which the defendant was alleged to have committed a like offense upon the present prosecuting witness. This evidence was offered and permitted to be introduced for the purpose of showing the lewd and lascivious disposition and tendency of the defendant to commit acts of that character. The respondent herein undertakes to justify the action of the trial court in the admission of such evidence under the authority of People v. Gasser, 34 Cal. App. 541, 168 Pac. 157. The record of that case, however, discloses that the evidence therein consisted of proof of other acts of a lewd and lascivious nature committed upon the person of the complaining witness, and it was therein held that such evidence was admissible for the limited purpose for which it was offered. But neither that case, nor any other case to which our attention has been called, which upholds the admission of such evidence, has gone so far as to approve the admission of evidence of lewd and lascivious acts committed upon other persons than the complaining witness in the particular case, but, on the other hand, in every case to which we have been cited, the courts of this and other jurisdictions have held that such testimony constitutes evidence of another and distinct crime, for which the defendant could have been informed against and tried, but for which he cannot be tried in the particular case."

In People v Dean, 253 Mich 434, 235 NW 211, the Supreme Court of Michigan refused to sustain a verdict which was supported by testimony of other similar offenses. That court reasoned as follows:

"The only apparent reasoning on which this testimony can be said to be relevant is that it tends to establish a disposition on the part of the defendant to commit such an act. If admissible for that purpose, other larcenies might be proven in a case where a man was charged with that offense, and other assaults, bigamies, rapes, etc., in like cases.

"That the defendant committed similar offenses with other boys has no direct tendency to show that he committed that with which he is charged, which had no connection with them. By the admission of such testimony, he is, in effect, called upon to defend against charges, without notice that he would be required to meet them. Where the charge involves conduct with the same person, as in the Swift case, he may, on the preliminary examination, elicit the fact that such testimony will be relied upon by the prosecution and be prepared to meet it as best he may."

In People v Asavis, 22 Cal App2d 492, 71 P2d 307, the District Court of Appeals, Second District of California, explained its reason for refusing to permit evidence of previous violations by stating:

"Not only by the appellate courts of the state of California, but also by many other courts having similar jurisdiction, it has been ruled that upon the trial of a defendant on a charge of the felonious commission by him of a sexual offense, evidence of like commission of other similar acts by the defendant with persons other than the prosecuting witness ordinarily is inadmissible. The case of People v. Anthony, 185 Cal. 152, 196 P. 47, 49, was one in which the defendant therein was charged with the commission by him of an offense of the same character as that here involved. One of the issues that was presented on that appeal related to the admissibility of evidence of the commission of similar acts by the defendant with persons other than the prosecuting witness. The court gave

427

the question full consideration, and, in part, said: 'Our law wholly rejects this character of testimony, not because it does not tend to prove the truth of the charge, but because of a just regard for the rights of the defendant, who, if confronted by such witnesses, instead of being compelled to stand trial on one charge made against him, would be confronted by half a dozen or more charges. Our rule confining the testimony to the crime charged in the information has only been relaxed so far as to permit the testimony of similar conduct with the complaining witness.' "

## VII

Without weighing the merits of each of the quoted cases and without generalizing on the whole field of admissibility of prior acts of misconduct, we deduce from the great weight of authority one widely accepted principle which we can adopt with conviction. That is, in the absence of some ground of admissibility not reflected in this record, if the evidence is admissible at all, the acts of prior sexual misconduct must be between the same parties. We believe that that is an essential requisite to the admission of evidence of the type with which we are concerned, and it is missing in this case. It is difficult for us to ascertain how a prior unrelated act of misconduct by the accused with a third party has a tendency to establish illicit relationships with either of the present participants. It must be conceded that the questioned evidence shows a disposition on the part of the accused to commit an act of sodomy, but that does not render the testimony admissible. Undoubtedly a sexual pervert is more apt to commit sex crimes than is a person of normal propensities. But one on trial for an alleged offense does not bare his soul to all of his previous sexual habits and he can hardly be expected to defend against one or many other separate lewd and lascivious transactions which are uncharged and unrelated to the one in issue. An alleged violator should not be put to that test unless specific intent is an essential element of the offense and he seeks to escape conviction by relying on the

**428**

failure of the Government to establish the requisite intent beyond a reasonable doubt. For reasons heretofore explained, we are not confronted with any such possibility.

There is yet another reason why the evidence concerning the Hoblitzell incident should not have been admitted. It must be conceded that the evidence of that offense was inflammatory and highly damaging. Yet the testimony was uncertain, doubtful, unconvincing, and no more than the victim's expressed conclusion that "maybe" it happened. Its lack of conviction might affect only its weight but, in addition, it was further weakened by age. The purported time of its commission was some three and one-half years prior to the time of the first alleged offense. Under a more closely knit course of immoral conduct where the evidence would tend to disclose that the same parties had a design to carry on their illicit relations over a span of years, remoteness might not be important. But it is not permissible legally to permit the court-martial to infer from one stale transaction that the accused probably committed the present crimes. That is one of the dangers the law seeks to avoid and here the vagueness of Hoblitzell's testimony and his inability to fix dates and places with any degree of certainty magnifies the unfairness to an accused in admitting testimony of this kind. The more remote the prior conduct, the more difficult it becomes to refute the charge and it is obvious from the record that the accused was hampered in defending against the purported prior offenses. Cases in support of this theory are Simpkins v United States, 78 P2d 594 (CA 4th Cir) (1935), (prior acts one year previously, too remote); Abbott v State, 113 Neb 517, 206 NW 153 (1925), (one year, too remote); People v Asavis, supra, (three or four years, too remote); Dunscombe v State, 19 Okla Crim 45, 197 Pac 1073 (1921), (nine months and fifteen months previously, too remote); and Manual for Courts-Martial, United States, 1951, paragraph 138g(3), example 4, page 246.

It is asserted that the board of review case, United States v Francis, 12 CMR 695, 708, is contrary to our holding, but we do not believe that conclusion necessarily follows. There the Government was permitted to show offenses which occurred over four years previously, but those acts of misconduct were committed by the accused and the prosecutrix. For the reasons assigned previously, the holdings are that where third persons are involved in the prior offenses, a different rule may be applied. Hall v United States, infra; People v Rogers, 324 Ill 224, 154 NE 909, 913 (1927).

## VIII

While the law officer instructed that the questioned evidence was admitted for the limited purpose of showing intent, that would be of little value as intent was not a real issue. The only way in which we can find the court-martial could use the evidence would be to support a belief that the accused was a despicable character. A case in point is Hall v United States, 235 Fed 869, 871 (CA 9th Cir) (1916). There the court reasoned thusly:

"We do not hold that upon a charge of an assault with intent to commit rape, evidence of former acts of like character upon a female other than the prosecuting witness cannot, under any circumstances, be received. We are inclined to the view that where such acts give strong indication of a design to commit rape they may be. But it is not a logical inference to say that testimony of an assault upon a child nearly 3 years previously shows that defendant had a design or intent to make an assault nearly 3 years later upon another child. It is too plain, however, that proof of such collateral matter tends to produce the belief that defendant is a person of depraved moral character, and is highly prejudicial to the defendant on trial before a jury."

We are not unmindful of the fact that this issue deals with an area within the discretion of the law officer, but here we find an abuse of that discretion. In this case, the accused was called upon to meet damaging charges of prior misconduct between himself and a third person which allegedly occurred a long time prior to the alleged offenses and there existed other convincing evidence of the general intent necessary to support the conviction. Under those circumstances, we cannot avoid the conclusion that this testimony served no legitimate purpose. We, therefore, follow the rules set forth in paragraph 138g of the Manual and hold that such evidence is not admissible in a trial before a court-martial. People v Dean, 253 Mich 434, 235 NW 211 (1931); State v Start, 65 Ore 178, 132 Pac 512; 46 LRA NS 266 (1913); United States v Jones, 2 USCMA 80, 6 CMR 80.

## IX

The board of review, as reflected in its decision, reached the conclusion that the evidence was inadmissible, but it then went on to hold that the error in its admission was not prejudicial. We reach a contrary result for the reason that the damning nature of the evidence could not help but prejudice the accused in the minds of the court-martial members. He became a witness in his own behalf and challenged directly the evidence produced by the Government. The findings by the court-martial had to be influenced by a belief or disbelief of his testimony and his credibility, therefore, became of paramount importance. We are sure that when he was tarred with the possible commission of two despicable crimes, his credibility was impaired, the Government's case was strengthened, and his defense was weakened appreciably.

## X

Our holding on this one evidentiary issue makes it unnecessary to consider the admissibility of the other questioned testimony. The decision of the board of review is reversed and a rehearing is ordered.

QUINN, Chief Judge (concurring in the result):

I concur in the result.

I do so in order to disassociate myself from Section III of the opinion which announces a view—wholly un-

**429**

necessary to the decision—that seriously conflicts with this Court's prior decisions in the area of multiplicity. Heretofore we have left accusers free to allege an offense in as many ways as they, in their discretion, deem advisable, and convening authorities are similarly at liberty to refer such charges for trial. Only when courts-martial have imposed punishment based on several aspects of the same offense have we intervened. United States v McCormick, 3 USCMA 361, 12 CMR 117; United States v Cooper, 2 USCMA 333, 8 CMR 133. Although I am not opposed to reviewing charges upon the basis of an abuse of discretion, in my opinion this is not a proper case for such review.

BROSMAN, Judge (concurring in the result):

Although I accept my brothers' disposition in this case, there are several expressions and implications found in Section III of the principal opinion with which I cannot agree unreservedly. For this reason I am required to dissociate myself from the contents of this part of it and to concur in result only.

I do not understand the majority to limit the admission of evidence of similar misconduct in sexual cases either to antecedent acts or to those between the same parties—this for every purpose and under all circumstances. If I did not read the opinion thus, it would be necessary that I qualify my action further. I have no sort of quarrel with the finding of error here—but it must not be forgotten that other misconduct possessing features in common with the act charged may be offered in such cases under a number of theories and to serve widely differing probative aims. See Wigmore, Evidence, 3d ed, §§ 300 et seq, 357 et seq, and 394 et seq. I am, therefore, anxious that, unlike some courts, we avoid overgeneralization.

I am sure that Judge Latimer is wholly free from guilt here. Indeed, unless I mistake him, he does not hold outright that evidence of like misconduct is admissible in any trial for a sexual crime as such. For my part, I would be willing to go further than he does, and to admit various sorts of it in many cases of this genre.