UNITED STATES, Appellee

v

PAUL W. MARCEY, JR., Private First Class, and
JOHN E. HOAG, Private, U. S. Army,
Appellants

9 USCMA 182, 25 CMR 444

No. 10,488

Decided April 18, 1958

*First Lieutenant Hazen V. Hatch* argued the cause for Appellants, Accused. With him on the brief were *Major Edward Fenig, First Lieutenant William H. Carpenter,* and *Edward S. Whitaker, Esquire,* Attorney for Appellant, Marcey.

*First Lieutenant Jon R. Waltz* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Charged with assaults with intent to commit sodomy, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, these accused were tried and convicted of the offenses by a general court-martial. The sentence imposed upon each of them was dishonorable discharge, total forfeitures, and confinement at hard labor for five years. The convening authority approved only so much of the sentences as provided for dishonorable discharge, total forfeitures, and confinement at hard labor for two years, and the board of review affirmed. This Court granted a petition for review in order to determine the admissibility of certain voluntary admissions of homosexual propensities contained in the accused's pretrial statements.

The documents, offered in evidence just before the close of the Government's case in chief, contained admissions by both accused that they had been drinking before the assault and that during its perpetration one held

the victim and the other hit him on the shoulder. No question is raised as to the admissibility of those facts, but defense counsel objected to the portions of the statements which in effect admit homosexual tendencies after drinking intoxicating beverages. The law officer overruled the objection and permitted the admissions to be considered by the court.

The Government's proof tended to establish the allegations that the accused had attempted sodomy in two ways upon the same victim at the same time and place and had physically battered him in the attempt. We may coalesce from the testimony of the various prosecution witnesses the following operative facts. The accused accosted their subject on the night in question lying on his bunk in a darkened servicemen's billet at Port of Whittier, Alaska. One of them positioned himself behind his reclining form and the other stood at his head. Both accused were exposed, and the one who lay on the bunk succeeded in pull-

**183**

ing down the victim's underclothing, over the latter's protest, and then comported himself as though he were performing an act of sodomy. The other accused attempted to make connection per os. The victim fought these advances and, after the scuffle, he was observed with a bloody nose.

In cross-examining three of the five witnesses testifying to this degrading assault, trial defense counsel suggested that the accused's conduct might be characterized as "just the usual rough, vulgar horseplay" which did not have sodomy as its intended goal. The Government was thus alerted to the theory of defense which was asserted throughout the trial and which was defense counsel's main theme on final argument. The hypothesis, in general, was that, although the overt acts of the accused were not in dispute, they were so equivocal that a jocular rather than sodomitical intent might be inferred to have accompanied their performance. In this posture of the case, it is manifest that the Government introduced the pretrial statements principally to shed light on the question of intent.

It is claimed by the defense that the reception of such evidence brought to light bad character traits of the accused and, as such, was error prejudicial to their substantial rights. Since no character evidence was adduced in favor of the accused prior to findings, appellate defense counsel are correct that the pretrial statements were not admissible as tending to show bad character. Michelson v United States, 335 US 469, 93 L ed 168, 69 S Ct 213 (1948); paragraph 138*f*(2), Manual for Courts-Martial, United States, 1951. Nor is there any problem in connection with attacking their credibility by way of impeachment, since they did not take the stand in their own behalf. Paragraph 153*b*, Manual, supra. See also United States v Provoo, 215 F 2d 531 (CA 2d Cir) (1954). The Government, however, urges the admissibility of this evidence as bearing on the issue of the intent motivating the accused's undisputed battery. This position is sound.

In United States v Warren, 6 USCMA 419, 20 CMR 135, this Court set out this general principal of law:

"From the very nature of the crime charged and from our recitation of facts, it is apparent that the earlier act of sodomy committed with the witness Hoblitzell has no reasonable tendency to show any intent, plan, scheme, motive, design or knowledge on the part of the accused to commit sodomy with Swailes. The transactions are so isolated and unrelated that, at best, all that the former acts of misconduct disclose, is a possible tendency or predisposition on the part of the accused to commit sexual acts of an unnatural type. If we were to admit that character of evidence, it should be done with full knowledge on our part that we are permitting highly inflammatory testimony to be admitted against an accused without any appreciable necessity therefor.

"We recognize the doctrine of necessity in cases involving specific intent but we find it of doubtful validity in this type of case. Sodomy belongs to a class of cases which excludes every possibility of an innocent intent. It cannot be committed through accident, misfortune or under an honest or ignorant mistake of fact. Inherent in its commission is the necessary mens rea to satisfy the requirements of criminal law. Once the act is proved, it becomes unnecessary for the Government to go further and establish by similar disconnected acts the presence of the necessary criminal intent."

The instant case has two features which differentiate it from United States v Warren, supra. First, the charge here is assault with intent to commit sodomy, a specific intent crime, and the admissibility of this type of evidence in such cases was excepted from the exclusionary rule enunciated in the *Warren* case. The second difference is that the Government in this case did not prove homosexual tendencies on the part of the accused by specific acts of prior misconduct but rather through their own admissions.

**184**

To put the first difference in focus, it is well to point out that here the assault was admitted and the sole question became the intent which accompanied that criminal act. The accused contended they were only fooling, and the Government countered with the theory that they were intent upon committing unnatural sexual penetrations.

We start our development with the general rule that upon the trial of a person, evidence of the commission of other offenses wholly independent of the one charged is inadmissible. But we have adopted many of the exceptions to that rule; see, e. g., United States v Pavoni, 5 USCMA 591, 18 CMR 215; and particularly have we allowed evidence of similar previous acts of misconduct which are not too remote to prove a criminal intent in specific intent offenses.

The admissions of the accused were general in scope and may have included the victim as one of the the participants in their previous activities. Without citing a wealth of authority, we can categorically state that evidence of similar acts of sexual misconduct between an accused and the complaining witness not too remote in time is admissible. Illustrative of this line of cases in Hodge v United States, 126 F 2d 849 (CA DC Cir) (1942). In that case, the court used the following language:

"The general rule, applicable in criminal prosecutions, is that evidence of other offenses than that for which the accused is on trial is inadmissible. In prosecutions for sexual offenses, however, there is a well established exception, the theory of which is that as the mental disposition of the defendant at the time of the act charged is relevant, evidence that at some prior time he was similarly disposed is also relevant. Evidence of prior acts between the same parties is admissible, therefore, as showing a disposition to commit the act charged, the probabilities being that the emotional predisposition or passion will continue. Such

evidence is admissible not only on authority, but on reason."

That case involved a charge of incest and specific intent was not in issue. With that principle behind us, we pass on to consider the rule, which may be more relevant to the case at bar, that has been applied when there have been different victims of the sexual deviates. See Bracey v United States, 142 F 2d 85 (CA DC Cir) (1944). The rule governing assaults in that category is best stated in Wigmore, Evidence, 3d ed, § 357. The author is speaking of the crime of rape, but the reasoning applies to other similar crimes. There we find this proposition elucidated:

"(2) The *Intent* principle (*ante*, § 302) clearly applies where the act is assumed as otherwise proved and the intent is in issue; *i. e.* in such cases, former acts of the kind are relevant to negative the intent as being of any other kind than to commit rape. (*a*) Where the charge is of *assault with intent*, the propriety of such evidence cannot be doubted. There should be some limitation of time, but merely to avoid the objection of unfair surprise (*ante* § 194). There need be no limitation as to the person assaulted, because the only purpose is to negative any other than the rape-intent, and a previous rape-assault on another woman has equal probative value for that purpose, for it is the general desire to satisfy lust that is involved in this crime, and no particular woman is essential for this. Accordingly, where the charge is assault with intent, former acts of the sort should be received without any limitation except as to time; though the Courts can hardly be said to have accepted this result fully."

The accused's admissions after the act were predicated upon circumstances which in fact existed at the time of the act, for in evidence as part of their pretrial statements were other admissions that they had been drinking for quite some time beforehand. Furthermore, they stated they possessed an abnormal perversion without regard to

**185**

the identity of their victims. Under those circumstances, the accused's mental predispositions toward sodomy were not limited to a specific individual. However, we agree with the cited authorities that to render such evidence admissible to show intent the prior acts need not be with the same person.

Another cogent reason for admissibility is that the accused, as has been indicated, defended on the ▮▮▮▮▮▮ basis of their assertion that they were only fooling with the victim. That sort of issue brings into play the theory of evidencing intent expressed in Wigmore, Evidence, 3d ed, § 302, as follows:

". . . In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defence or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, *i. e.* criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offence according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent."

In People v Hall, 172 Misc 930, 16 NYS 2d 328, the State had to prove an intent on the part of the defendant to commit sodomy as an element of the crime charged of attempted sodomy. As in the case at bar, proof was required that "the acts done by the defendant were committed wilfully and designedly; in other words, that they were not accidental, unintentional nor done as a joke." The Court rationalized as follows:

". . . This crime is unusual and unnatural. The statute refers to it as a crime against nature. A normal person would not commit the crime. Who would commit such a crime? It certainly is essential to inquire into the mental attitude and physical reactions of a man charged with this crime in order to determine whether he is such a man. The law presumes that the defendant in this case had the complainant in his car for a legitimate purpose. When questioned by the police, the defendant claimed he had no criminal motive, intent or purpose in his associations with this boy. The natural sex instinct is for the opposite sex. How then, are we going to determine the sexual attitude of this defendant toward his own sex? He is presumed in law to be a man with normal sexual desires and not possessing an abnormal perversion. It was necessary for the People to prove that the defendant was homosexually inclined; that he had emotions which led him to commit the crime; that he had a passion toward his own sex that was unnatural. If it be determined that the defendant was possessed of the passion, emotion and desires referred to, then he is capable of committing the crime of Sodomy and it follows that the jury could infer that he had a sexual force which impelled him to attempt it."

What the Government was seeking to prove here involved the mental state which actuated the accused in committing this assault. It could have been innocent as contended for by them or it could have been criminal as asserted by the prosecution. Any evidence which would realistically and logically help the court decide that issue was material. True, that policy considerations sometimes dictate that material evidence should be held incompetent because the potentialities for harm to the accused far outweigh the necessity of using the evidence for legitimate purposes. However, in cases such as this, where the specific intent must be established by circumstantial evidence of this type, the necessity rule loses its validity and former acts of a similar kind may be shown to negative the intent as being any other kind than to commit sodomy. Certainly, a person who practices homosexuality is likely to assault for the purpose of satisfying his perverted sexual cravings, and proof of previous deviations from the sexual norm is a valuable ingredient in

establishing specific intent in subsequent offenses of the same kind. Denial of the admission of such evidence for policy reasons is not justified in the wisdom of most judges and text writers who have considered the question, and we have no disposition to depart from their logic and rule.

We need discuss one other point of this facet of the controversy very briefly. The admissions ▮▮▮▮ show a disposition to commit sodomy while under alcoholic stimulation. No specific incident is referred to, but a mental disposition to engage in the act is shown. A statement such as that merely eliminates one step in the processes of making logical deductions. If proof of a prior act is shown, an inference of a mental disposition to commit the act is inferred as of that time. The next deduction is that the mental disposition continues in force. When the subsequent act is performed, it may be inferred that it was impelled by the disposition. In this instance, we have the accused admitting that they were under the influence of intoxicating liquors and that when in that condition their disposition to engage in sexual perversions was activated. From that it naturally follows that proof of the first act is not necessary because their admission shows the likelihood that when they committed this offense the mental force was operating.

Finally, accused assert that their motivations were toward consensual homosexuality which would have no proba-

tive value with regard to offenses involving violent acts. That ▮▮▮▮ is a specious argument when consideration is given to the homosexual who misjudges a prospective partner. If it turns out that his perverted advances are unwanted and the hoped for consent is lacking, the prospect has been victimized by an assault with sodomitical intent. For example, Beausoliel v United States, 107 F 2d 292 (CA DC Cir) (1939), involved a man who had exposed himself and then requested a six-year-old girl to hold his privates. She complied with his request out of fear. What the court said with reference to the common-law elements of this type of sexual assault applies with equivalent vitality to improper liberties one takes with another in furtherance of an intent to engage in consensual sodomy:

". . . The attempt need not be made violently, insolently, or in anger. Such assaults are not made in that way."

The antecedent disposition toward consensual sodomy, therefore, has probative value in proving an assault with intent to commit sodomy, since it is the unwilling reaction of the person accosted which makes out the assault though the assailant may devoutly wish a consensual act.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.