**UNITED STATES, Appellee,**

v.

**Private E-2 Gary S. DEARMAN, SSN
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, United States
Army, Appellant.**

CM 437773.

U. S. Army Court of Military Review.

30 April 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Willard E. Nyman, III, JAGC, Captain Julius Rothlein, JAGC, and Captain R. Wade Curtis, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Major David McNeill, Jr., JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and FELDER, Appellate Military Judges.

OPINION OF THE COURT

MITCHELL, Senior Judge:

The primary issue in this case is multiplicity. We are asked to decide whether the offenses of attempted rape and forcible sodomy (cunnilingus), both alleged to have occurred within the span of a few minutes and committed upon the same victim, were separately punishable.[1] We say that they were.

I

On 4 August 1978 the dependent wife of an Army sergeant reported to the dispensary at Lee Barracks, Mainz, Germany, to begin her induction physical for entry into the U.S. Army. The accused, an x-ray technician, prepared her for a chest x-ray by directing her to disrobe from the waist up. When she asked for a gown, he replied, "Don't worry about it, I see that every day." She became suspicious but reluctantly disrobed as instructed, folded her arms protectively across her chest and walked into the x-ray room. After the accused took the x-ray she returned to the dressing room and put on her clothes. The accused entered the dressing room, grabbed her wrists and forced them over her head. When she asked what he wanted, he replied, "I don't want to hurt you, this won't take long." As he began kissing her on the neck she moved her head from side to side in an effort to avoid his unwarranted liberties. After twisting her arms behind her back he unbuttoned her blouse and continued to fondle and kiss her upper torso.

1. Tried by a general court-martial, with members which included enlisted personnel, the accused was convicted, contrary to his plea of attempted rape and forcible sodomy in violation of Articles 80 and 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880 and 925. His approved sentence provides for a dishonorable discharge, confinement at hard labor for four years, forfeiture of $200.00 pay per month for 48 months, and reduction to the grade of Private (E-1).

Ignoring her pleas to stop he extended his exploration and repeated, "I don't want to hurt you." After removing her blouse, he unbuckled her belt, undid her slacks and pulled her panties down below her knees. The accused, who is 6 feet 2 inches tall and weighs 200 pounds, grasped his victim (5 feet tall and 107 pounds) beneath her armpits, lifted her high off the floor and despite her resistance performed the act of cunnilingus.

When lowered to the floor she attempted to break free and escape. Scotching the exit door with his foot he spun her around and doubled her, face down, over a chair. Unzipping his trousers he attempted copulation from a caudal position but evasive movements by the victim prevented a penetration. Only after experiencing a premature emission did the accused allow her to stand upright and pull up her pants. Handing the prosecutrix her bra and blouse the accused sardonically remarked, "Wasn't that nice of me to do that." Grabbing her purse and jacket she fled the room and reported the attack to on-duty personnel on the second floor.

She further testified that she was terrified during the attack and recalled seeing a pair of surgical scissors sticking out of the accused's shirt pocket. She, in her panic and fright, perceived the statement, "I don't want to hurt you, this will only take a little while," as an implied threat to harm her if she did not submit. She resisted to the best of her ability under the circumstances and did not believe that screaming (due to the location of the x-ray room and the thickness of the walls) would do any good. While reporting the attack she was sobbing and appeared very emotionally agitated and shaken. At trial the defense argued implied consent evidenced by minimal resistance.

From the legal and competent evidence of record we find beyond a reasonable doubt that the accused committed the unlawful acts for which he was found guilty.[2]

## II

We now turn our attention to the adjudged sentence. In essence the appellant is complaining that he was twice punished for a single crime, i. e., the two offenses merged and became one for sentencing purposes.

Appellant, through counsel, argues that there is a unity of time between the occurrence of the act of sodomy and the overt act supporting the charge of attempted rape. His kissing the victim on the neck and other parts of her body, he argues, were "part and parcel" of the overt act of disrobing her, bending her over a chair and unsuccessfully effecting penetration, the attempted rape. Similarly, he continues, a connected chain of events exists. The two offenses occurred simultaneously; ". . . the act of sodomy was merely an act of fondling and kissing." There was no evidence to establish two intents on his part. Sexual intercourse was the single desired result. The alleged injury and outrages to the modesty and feelings of the victim, by means of the feloniously and forcibly inflicted acts of natural and unnatural carnal copulation are the same, he argues. Therefore, a separate societal norm is not here involved.

We find his argument legally unsound, and out of touch with civilized society's sense of decency and moral values.

## III

Where the facts of the offenses are so integrated as to be, in effect, a single transaction or chain of events, charges from those facts have been held to be multiplicious. *See United States v. Irving,* 3 M.J. 6 (C.M.A.1977), a case involving simultaneous drug offenses. Also offenses committed upon a "single impulse" have been held to be essentially one offense for purposes of punishment. *See United States v. Weaver,* 20 U.S.C.M.A. 58, 42 C.M.R. 250 (1970), in which the accused committed several offenses while escaping from confinement.

**2.** *See* Article 66(c), UCMJ; 10 U.S.C. § 866(c).

In *United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971), the Court of Military Appeals recognized that neither the "single integrated transaction" test or the "single impulse" test should be used as a talisman to overcome more penetrating analysis when there are clearly two or more distinct criminal acts that arose out of essentially one transaction or course of conduct. *See also United States v. Harrison,* 4 M.J. 332 (C.M.A.1978); *United States v. Rose,* 6 M.J. 754 (N.C.M.R.1978).[3]

It is clear that the attempted rape and sodomy in this case were separate offenses when we apply the "societal norms" test enunciated in *United States v. Beene,* 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954). Attempted rape is an offense against the person. Sodomy is an "offense against morals" or a "crime against nature." The strict common-law meaning has been greatly enlarged by statute.[4]

Fortunately, in military law the meaning of sodomy is much simpler to apply. As Article 125, UCMJ, is drafted it encompasses all unnatural sexual intercourse between humans or between humans and animals:

(a) buggery—penetration of male or female anus by male organ.

(b) fellatio—penetration of human mouth by male organ.

(c) bestiality—sexual intercourse with an animal, committed by a human male or female.

(d) pederasty—same as buggery but limited to young males as victims.

(e) cunnilingus (if penetration is established)—copulation by mouth with female organ.

*See United States v. Hooper,* 9 U.S.C.M.A. 637, 26 C.M.R. 417 (1958); *United States v. Warren,* 6 U.S.C.M.A. 419, 20 C.M.R. 135 (1955). The essence of sodomy, in all its five varieties of perverted sexual acts, is the deviatory act itself, with or without consent or force. *United States v. Rose, supra.*[5] The thrust of laws proscribing sodomy is the prohibition of "abominable and detestable crimes against nature." *See* 2 R. Anderson, Wharton's Criminal Law and Procedure, § 751 (1957).

## IV

We reject appellant's claims that his punishment precludes separate liability for oral copulation and attempted rape since these offenses occurred during the rape attempt and had the same intent and objective—his sexual gratification. To us it is clear that they constituted separate and distinct acts, one natural the other perverse, involving two separate and anatomically unrelated

3. *United States v. Ruggiero,* 1 M.J. 1089 (N.C. M.R.1977) (rape and indecent assault not multiplicious); *United States v. Carlton,* 40 C.M.R. 412 (A.B.R.1968) (sodomy and indecent act not multiplicious); *United States v. Burns,* 25 C.M.R. 791 (A.F.B.R.1957) (sodomy and indecent acts with a child not multiplicious); *United States v. Haas,* 22 C.M.R. 868 (A.F.B.R.1956) (sodomy and lewd acts not multiplicious).

4. At common law the term "crime against nature" embraces both sodomy and "bestiality" (sex with an animal). Within the various statutes is encompassed the perverted act of uniting the mouth of one participant with the sexual organ of the other, with a view of gratifying the sexual desire. Cunnilingus is an act committed with the mouth and the female sexual organ while fellatio (or fellation) is the offense committed with the male sexual organ and the mouth. *State v. Murry,* 136 La. 253, 66 So. 963; *see Blacks Law Dictionary* (Revised Fourth Edition), at 556 and 743. The term sodomy, strictly speaking, is usually thought of as an equivalent to "pederasty," that is, the sexual act as performed by a man upon the person of another man or boy by penetration of the anus. The term has also, without great violence to its original meaning, been extended to cover the same act when performed in the same manner by a man upon the person of a woman. Although a few jurisdictions have held that oral copulation is not properly called "sodomy" within the meaning of the statute, a greater number of jurisdictions hold otherwise. *See State v. Start,* 65 Or. 178, 132 P. 512, 46 L.R.A.,N.S., 266 (1913).

5. We are indebted to our nautical brothers on the U.S. Navy Court of Military Review who were faced with an issue very similar to ours. In the *Rose* case, Judge Granger, writing for a unanimous court, very succinctly analyzed the law as applied to the facts and produced an outstanding decision on the subject of multiplicity.

organs of appellant's body.[6] Notwithstanding appellant's claim and Dr. Kinsey's abetting script to the contrary, we find that neither sexual offense was committed as a means of committing the other, neither facilitated commission of the other, and neither was incidental to the commission of the other.[7] The appellant's broad claim that he had but one objective—his sexual gratification—and that the act of oral copulation was merely an act of fondling and kissing [foreplay] strikes the rational mind as being frugal with logic and prodigal with mawkish license. The approach urged by the appellant would reward an assailant who has great criminal ambition with a punishment which fails to reflect that ambition. One who attempts to achieve sexual gratification by committing other base criminal acts on his victim is substantially more culpable than one who commits only one such act. That greater culpability should be reflected in the sentence. Let those uninhibited evildoers who would "as soon die for a sheep as die for a lamb" suffer the consequences of their added criminal liability. We therefore find that appellant's charges were not multiplicious.

The findings of guilty and the sentence are affirmed.

Judge DRIBBEN concurs.

Judge FELDER did not participate.

---

**6.** "The natural functions of the organs for the reproduction of the species are entirely different from those of the nutritive system. It is self-evident that the use of either opening of the alimentary canal for the purpose of sexual copulation is against the natural design of the human body." *State v. Start, supra*, note 4, at 715.

**7.** *See People v. Perez*, 23 Cal.3d 545, 153 Cal. Rptr. 40, 591 P.2d 63 (*en banc*, 1979); *Lillard v. State*, 528 S.W.2d 207 (Tenn.Cr.App.1975).