**UNITED STATES, Appellee,**

v.

**Specialist Four (E-4) Steven DAVIS, SSN 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, United States Army, Appellant.**

**SPCM 17725.**

U. S. Army Court of Military Review.

11 Jan. 1983.

Lieutenant Colonel R. Rex Brookshire II, JAGC, Major Patrick F. Crow, JAGC, and Captain John D. Martin, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Patrick M. Flachs, JAGC, and Captain Karen A. Charbonneau, JAGC, were on the pleadings for appellee.

## OPINION OF THE COURT

Before FULTON, COHEN and NAUGHTON, Appellate Military Judges.

### PER CURIAM:

Appellant was convicted, contrary to his pleas, of assault with intent to commit sodomy and communication of a threat. He now contests the findings of guilty of the first offense. He contends there is insufficient evidence that he intended to engage in forcible sodomy, that the offense of assault with intent to commit sodomy requires an intent to commit nonconsensual sodomy, and, therefore, that he is not guilty of the charged assault. We disagree.

The facts are essentially undisputed. Appellant awakened the victim, Private S, at 2300 hours and asked him to come to appellant's room to retrieve a pair of shoes appellant had borrowed. When S, clad only in his underwear, entered appellant's room, appellant closed and locked the door and engaged S in casual conversation for a time. With S's consent, appellant eventually turned out the light so they could "bullcrap." Appellant began to disrobe and asked S if he knew the meaning of the word "bisexual." S acknowledged he did, but appellant, apparently unsatisfied, produced a dictionary and asked S to read the definition of the word, which he had circled in red

ink. S read it, and appellant disclosed that he was bisexual. Although he thought appellant was kidding, S was "worried," as appellant was now dressed, like S, only in his underwear.

Appellant told S he "wanted" him. Appellant offered first twenty, then forty, dollars if S would permit appellant to perform fellatio upon him. S declined, explaining that he was raised to consider such conduct as wrong. Appellant said he would get on his hands and knees and beg, and he asked S to go to bed with him. S said no. Undiscouraged, appellant knelt in front of S, spread S's legs and began to lick the inside of S's thighs between his knees and crotch. For a time S attempted to push appellant back; but when this proved unsuccessful, he shouted appellant's name. Appellant immediately stopped licking S's legs and told him it was not necessary to shout. Appellant retreated to his bed and told S that he usually got what he wanted and that S would regret rebuffing him. Appellant then reached under a pile of clothes and pretended to grasp a knife. He asked if S would permit him to perform fellatio if he threatened to stab him. S said no. Appellant informed S he would continue to do "this" to him every day until he started to like it and warned him not to report their meeting to anyone or appellant would kill him. When appellant was subsequently called to the phone outside his room, S left and reported the incident.

At trial, the Government offered the testimony of S and a statement given by appellant to a special agent of the Criminal Investigation Command the afternoon after the incident. Both were in essential agreement on the facts set out above. In his statement, appellant admitted that he intended to perform fellatio upon S and would have done so, "if he had let me." The defense presented no evidence on the merits.

 Sexual assaults are nonconsensual offenses. *United States v. Bruskin,* 39 C.M.R. 783, 786 (A.B.R.1968), *pet. denied,* 18 U.S.C.M.A. 631, 39 C.M.R. 293 (1969). Because consent is a defense to simple assault

and simple assault is a component of assault with intent to commit sodomy, consent of the purported victim is a defense to the greater offense. *People v. Hickey,* 109 Cal. 275, 41 P. 1027 (1895); *accord People v. Dong Pok Yip,* 164 Cal. 143, 127 P. 1031 (1912); *see Taylor v. State,* 214 Md. 156, 133 A.2d 414, 418–19 (1957) (Horney, J., dissenting). We find ample evidence of record to support the conclusion that S did not consent to appellant's advances. Appellant argues, however, that the absence of S's consent to appellant's attempt to persuade him to engage in fellatio does not aggravate appellant's conduct beyond simple assault, because appellant intended a seduction and not forcible sodomy. *Cf. United States v. Polk,* 48 C.M.R. 993, 997 (A.F.C.M.R.1974) (conviction of attempted rape set aside where appellant's conduct "amounted to nothing more than an atrocious and gross attempt to persuade the victim to consent to intercourse").

 Appellant's reliance on *Polk* is misplaced. While an intent to seduce, but not to force, may be crucial to the offense of *attempted* forcible sodomy, it is irrelevant to the offense of assault with intent to commit sodomy. As the Court of Military Appeals observed in *United States v. Marcey,* 9 U.S.C.M.A. 182, 187, 25 C.M.R. 444, 449 (1958), the intent to engage in consensual sodomy is not inconsistent with the offense of assault with intent to commit sodomy, "since it is the unwilling reaction of the person accosted which makes out the assault though the assailant may devoutly wish a consensual act." Appellant's advances were unwanted and the hoped for consent was not forthcoming. S was thus assaulted with sodomitic intent.

The findings of guilty and the sentence are affirmed.