UNITED STATES, Appellee,

v.

Stephen F. METZ, Staff Sergeant,
U.S. Army, Appellant.

No. 66,899.
CM 8903115.

U.S. Court of Military Appeals.

Argued April 10, 1992.
Decided July 30, 1992.

For Appellant: *Captain Edward T. Keable* (argued); *Lieutenant Colonel James H. Weise* and *Captain James M. Heaton* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Donna L. Barlett* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Major Joseph C. Swetnam* (on brief).

## Opinion of the Court

CRAWFORD, Judge:

Appellant was tried by general court-martial composed of officer and enlisted members at Fort Gordon, Georgia. Contrary to his pleas, he was convicted of premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. The court members sentenced appellant to a dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the adjudged sentence. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated May 24, 1991.

We granted review on the issue whether the military judge erred in finding evidence of appellant's prior acts to be admissible under Mil.R.Evid. 404(b), Manual for Courts-Martial, United States, 1984. We hold that the military judge did not err and uphold the decision below.

### I

Appellant was convicted of the premeditated murder of his wife, Catherine L. Metz. Physical evidence seized from the crime scene confirmed that Mrs. Metz died in the living room of the couple's home. Her face was visibly battered, displaying various contusions, including noticeable nasal trauma. Death occurred after a severe beating in which nine of her ribs were fractured, and she was strangled. Her body was transported in the trunk of her own car and thrown into a dumpster at a nearby shopping mall. It was discovered the next day by a couple searching the dumpster for boxes. Appellant admitted driving Mrs. Metz's car the night she died. An autopsy revealed that Mrs. Metz had not been raped, and there was no evidence of forced entry into the home or of robbery. Fiber evidence from the home and from appellant's clothes was found in the trunk of his wife's car and on her body.

Four witnesses testified about events which took place the night that Mrs. Metz died. The last person to see Mrs. Metz alive was a neighbor, Andrea Motley, who testified that she had spoken to the victim at approximately 8:00 p.m. and that the victim had no facial injuries but appeared to have been crying. An upstairs neighbor, Ms. Katherine Colgan, overheard a loud fight between appellant and his wife from 7:00 p.m. to 8:30 p.m. During this argument, Mrs. Metz was heard to cry, "Well, go ahead and hit me then." Minutes later, she said, while crying, "You lied to me; you don't hit the ones you love." Andrew Crumrine and Ben Moore testified that around midnight appellant told them that one time during an argument he had reached out and lifted his wife up off the floor by her nose and that he had to "rough her up" sometimes.

Additionally, Captain (Dr.) Jerel J. Erne testified about Mrs. Metz's longstanding history of psychiatric and marital problems, including her claim of being physically abused by appellant, for which he counseled and treated her on repeated occasions.

Appellant admitted to "one time" picking his wife up by her nose because she tried to hit him on the chest, but denied physically abusing his wife. Appellant's defense at trial was that he was not at home between 9:00 p.m. and 10:30 p.m. when his wife was murdered, and he did not murder her.

Proving the identity of the murderer was of paramount importance at trial. The prosecution's theory was that appellant's

statements about the nose-lifting incident and roughing up his wife were corroborated by the nasal trauma and beating sustained by Mrs. Metz the night she died and that they were relevant to identify appellant as her murderer.

Trial defense counsel moved *in limine* to suppress appellant's statements about the nose-lifting incident and roughing up his wife as uncorroborated admissions. The military judge denied the motion, finding that appellant's statements were not admissions but rather uncharged misconduct within the meaning of Mil.R.Evid. 404(b) "to show identification of Mrs. Metz's possible attacker and on the issue of premeditation or intent."

## II

■ The "uncharged misconduct" doctrine is based on Mil.R.Evid. 403 and 404(b). Read together these rules provide that if "[e]vidence of other crimes, wrongs or acts" committed by appellant is logically relevant to prove a fact in issue other than appellant's character *and* proof of that fact outweighs the evidence's unfairly prejudicial character, the evidence is admissible.

■ The theory of admissibility of evidence of uncharged misconduct differs from that of character or impeachment evidence. Unlike impeachment evidence, it is not necessary for an accused to testify before uncharged misconduct is admissible; and even if appellant denies the uncharged misconduct, it may be proved by extrinsic evidence. Unlike character evidence, uncharged-misconduct evidence does not go solely to the question of enhancing or decreasing veracity in the eyes of the factfinder but rather to a determination of guilt or innocence. In many instances, it is direct evidence bearing on the issue of guilt or innocence.

■ As the uncharged-misconduct doctrine indicates, the misconduct alleged (in

this case the nose-lifting incident and roughing up his wife) must be both logically and legally relevant.

With respect to logical relevance, *see United States v. Gipson,* 24 MJ 246, 251 (CMA 1987), we hold the evidence to be probative to show that *appellant* committed the alleged misconduct and that it was admitted by the military judge for a proper purpose under Mil.R.Evid. 404(b). That rule sets forth noninclusive examples of the purposes for which uncharged misconduct may be properly admitted. *See United States v. Thomas,* 11 MJ 388, 393 (CMA 1981). The military judge admitted it to show the identity of the murderer and to show intent or premeditation.

■ An additional basis for logical relevance in this case is that the other acts and his admission of them were part of the *res gestae* of the murder and, thus, helpful to place the identity and intent evidence in context. *United States v. Thomas, supra* at 392–93. *Res gestae* evidence is vitally important in many trials.* *Id.* at 393. *See also United States v. Peel,* 29 MJ 235, 239 (CMA 1989). It enables the factfinder to see the full picture so that the evidence will not be confusing and prevents gaps in a narrative of occurrences which might induce unwarranted speculation:

> Indeed, a rule limiting the admissibility of testimony like that of [victim] would provide an inducement to prefer more charges in order to avoid lack of continuity in the evidence received. At a time when multiple charges for a single transaction are already common place as a means for meeting the exigencies of proof, we are not anxious to provide an added inducement for overcharging.

*United States v. Thomas, supra* at 393. Analyzed in this light, the evidence of the nose-lifting incident and of roughing up his wife was interwoven into the *res gestae* of the murder and provided information the members could use to determine the identi-

---

* The change to Mil.R.Evid. 404(b), Manual for Courts-Martial, United States, 1984, effective May 29, 1992, providing a notice requirement does not apply to what is commonly referred to

as *res gestae* or intrinsic evidence. *See* Fed. R.Evid. 404(b), Advisory Committee's Note, as applied to courts-martial by Mil.R.Evid. 1102.

ty of the murderer and his intent when committing the crime.

When identity of the perpetrator is an issue, evidence of uncharged misconduct may be admissible to prove identity. *See, e.g., United States v. Robinson*, 560 F.2d 507 (2d Cir.1977) (en banc), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). In this case, appellant's statements about lifting his wife off the ground by her nose and roughing her up occurred on the very same night that she died a violent death. Coincidentally, his wife was also brutally beaten and her nose showed evidence of trauma not observed by a neighbor earlier in the evening.

▪ Uncharged misconduct may also be admissible to show intent or premeditation. *See, e.g., United States v. Marcey*, 9 USCMA 182, 25 CMR 444 (1958). Although appellant's defense was that he was not home at the time the murder occurred and, therefore, did not murder his wife, the question of premeditation as an element of the offense still must be proved by the Government. *Estelle v. McGuire*, —— U.S., ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The nose-lifting and roughing up are directly related to the state of mind of appellant when he strangled his wife to death with his bare hands.

▪ A determination of legal relevance, on the other hand, requires examination of a number of factors to determine whether the probative value of the uncharged-misconduct evidence outweighs its prejudicial effect. Mil.R.Evid. 403. A key factor is whether the "nexus" between the uncharged misconduct and the crime is close "in time, place, and circumstance." *United States v. Janis*, 1 MJ 395, 397 (CMA 1976). The evidence indicates that a neighbor saw Mrs. Metz early in the evening and did not observe trauma to her nose; that another neighbor heard appellant and his wife arguing; and that appellant very likely struck his wife during that argument. This evidence, when coupled with the fact that appellant discussed lifting his wife off the ground by her nose and roughing her up around midnight of the day that she died, creates the substantial likelihood that these incidents occurred on the evening of her death and were part of a continuing course of conduct eventually leading to Mrs. Metz's death. In this case the nexus is very close indeed.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.