UNITED STATES, Appellee,

v.

**Chief Warrant Officer Three Robert R. INGHAM, 262–39–8074, United States Army, Appellant.**

**ACMR 9002347.**

U.S. Army Court of Military Review.

26 Feb. 1993.

For Appellant: Bryan G. Hershman (argued); Major Fran W. Walterhouse, JAGC, Captain Michael P. Moran, JAGC, Captain Teresa L. Norris, JAGC (on brief).

For Appellee: Captain Jane F. Polcen, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC, Major Timothy W. Lucas, JAGC (on brief).

Before GRAY, CREAN and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant was found guilty, on mixed pleas, by a general court-martial composed of officer members, of sodomy with a child under the age of sixteen by force and without consent (three specifications), indecent acts or liberties with a child under the age of sixteen (three specifications), indecent assault, adultery, disobeying an order by a superior commissioned officer, and breaking arrest (two specifications), in violation of Articles 90, 95, 125, and 134, 10 U.S.C. §§ 890, 895, 925, and 934 (1982) [hereinafter UCMJ]. The appellant pled not guilty to the sexual offenses but guilty to the disobedience and breaking arrest offenses. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for forty years, and forfeiture of all pay and allowances.

The appellant asserts that the evidence for the sodomy, the indecent acts, and assault offenses is not legally and factually sufficient to support the findings of guilty; the specifications of these same offenses are multiplicious for sentencing; the military judge erred in denying challenges for cause against two court members; his civilian trial defense counsel was ineffective; and, the sentence is not appropriate for the

findings of guilty. We disagree on all assertions of error and affirm.

## I. Facts

In 1986, the appellant was assigned as a helicopter pilot to a unit in Japan. He and his wife had marital problems and were divorced. There was one child, Shannon, from this marriage. After the divorce, he met and married his second wife, Colleen, a civilian employee of the Department of the Army stationed in Japan. The new Mrs. Ingham, who was divorced, had her daughter, Staci, who was born in 1978, with her. About a year after the marriage, the appellant and Colleen had a son, Shawn. Living in the home for most of 1988 and 1989 was the appellant, Colleen, Staci, Shannon, and Shawn.

Colleen was required as part of her job to travel extensively. The appellant was responsible for the children during these absences. In February 1988, the entire family took a vacation to Colorado. The family stayed with the appellant's aunt. Also living in the aunt's house was Ms. Cogdill, the appellant's twenty-one-year-old step-cousin.

In mid–1988, Colleen was transferred to an Army position in Germany. She left Japan before the rest of the family, but they joined her in the summer of 1988 when the appellant was assigned to an aviation unit in Germany. In January 1989, Ms. Cogdill joined the family to live with them and be a "nanny" for the children. She anticipated that she would stay two years.

Ms. Cogdill's relationship with the appellant was strained, but good with the rest of the family. She decided to leave her job after only six months because she felt the appellant was taking out his feelings about her on the children. Before she left in June 1989 to return to the Denver, Colorado area, the appellant accused her of stealing money from him.

In October 1989, Ms. Cogdill was interviewed by civilian police in Colorado about a theft of money in Germany reported by the appellant. She told the police that she did not steal the money and she left Germany because she feared for her safety. She informed the police that the appellant had sexually assaulted her and that she believed the appellant was also sexually assaulting Staci.

Ms. Cogdill testified that she was sexually assaulted by the appellant during the vacation visit to her mother's Colorado house in February 1988. She was twenty-one at the time. The appellant entered her bedroom, and she awoke with the appellant's hand under her nightgown and panties. The appellant told her to be quiet and then left the room. She did not report this incident to anyone until she told the civilian police in October 1989.

Based on information provided by the civilian police of a potential sexual assault by the appellant on Staci, agents of the Criminal Investigation Command (CID) in Germany questioned Staci and Colleen in January 1990. By this time, the appellant and Colleen were having marital problems and were estranged.

Staci testified that starting in Japan when she was seven years old and continuing when the family lived in Germany, the appellant would enter her bedroom while her mother was away or asleep and sexually assault her. The appellant would run his hands over her entire body. He would also place his penis on her body and tried to place his penis in her vagina and anus. He made her place her mouth on his penis and swallow when he ejaculated in her mouth. He also placed his tongue on her vagina. These acts occurred many times, sometimes as frequently as twice a week. Shannon slept in the room with Staci, but since Shannon was younger, she never awoke when the appellant came into the room.

Staci further testified that the appellant showed her a videotape of her mother and the appellant engaged in various sexual acts. The videotape was made by the appellant to have while Colleen was away on temporary duty. Colleen gave the tape to the CID and it was admitted as a prosecution exhibit. The appellant told Staci that he wanted her to perform the acts depicted in the video.

When the CID informed Colleen of Staci's statement, Colleen told the CID that her marriage with the appellant was estranged and the appellant was having an affair with another woman. Colleen testified that in December 1989, she left for a TDY trip and the appellant was to stay with the children. She called home after arriving at the temporary duty site to discover that the appellant was not home and the children were alone. She returned home that evening. The appellant showed up early the next morning. The appellant told Colleen that he was having an affair with a woman he had met the previous August. Colleen had previously discovered in the trunk of the appellant's car an envelope with pictures of a blond woman in various provocative poses with minimal clothing. She returned the pictures except two which she saved and were admitted as prosecution exhibits. The appellant admitted to her that he was having an affair, to include sexual intercourse, with the woman, Mrs. M.

## II. Legal and Factual Sufficiency

The appellant contends that the evidence is not legally and factually sufficient to support the findings of guilty of the sexual offenses. The appellant testified that he did not commit any of the sexual offenses. The only evidence to support the offenses was the testimony of Staci, Colleen, and Ms. Cogdill. The appellant contends that each had a substantial motive to lie: Staci, to end the marriage of the appellant and her mother; Colleen, because she was in the midst of a divorce from the appellant; and Ms. Cogdill, because of his allegation of theft.

██ The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making

allowances for not having personally observed the witnesses, this Court is itself convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

██ Staci testified that the acts of sodomy were done by force and without her consent. She also testified that the appellant showed her the videotape and the tape itself was evidence before the Court. Ms. Cogdill testified that the appellant sexually assaulted her. Colleen testified that the appellant admitted to her his affair with Mrs. M and that he had sexual relations with Mrs. M. Evidence of their credibility and motives to lie were before the fact finders and this Court. We find that their testimony provides evidence on all the elements of the sexual offenses and hold that the evidence is legally and factually sufficient to support the findings of guilty.

## III. Multiplicity

The government charged the appellant with sodomy with Staci in three specifications. The first alleged sodomy occurred from 1 January 1987 to 31 December 1987 in Japan. The second specification alleged the sodomy occurred in Japan from 1 January 1988 to 30 June 1988. The third specification alleged the sodomy occurred in Germany from September 1988 to December 1989. For the indecent act offenses, the government charged in the first specification indecent acts in Japan from November 1986 to February 1988. In the second specification, the acts occurred in Japan and Germany from March 1988 to December 1989. The appellant asserts that the sodomy specifications should have been considered as only one offense for purposes of sentencing, and the indecent acts should only be one offense for sentencing. He contends that the first two specifications of sodomy differ only as to the dates, and the third specification differs only as to date and location. He further contends that the indecent acts offenses differ only as to date and location. He alleges that the acts were the same continuing course of conduct and each should be punished only as one offense.

■ The government has the prosecutorial discretion to decide the number of offenses to refer to trial against the appellant. However, this prosecutorial discretion is not unlimited. *United States v. Baker*, 14 M.J. 361 (C.M.A.1983). A specification may be multiplicious with another specification if it alleges the same offense, or an offense is necessarily included in the other, or if they describe the same conduct in two different ways. Manual for Courts–Martial, United States, 1984, Rules for Court–Martial 907(b)(3)(B) discussion [hereinafter R.C.M.].

■ Staci testified to a series of sodomies and indecent acts on her by the appellant continuing from 1986 to 1989 both in Japan and Germany. The government could have charged each and every act of sodomy or indecent act separately and they would have been separate for sentencing purposes. *United States v. Harrison*, 4 M.J. 332 (C.M.A.1978) (falsifying balance sheets on six separate occasions even though the same *modus operandi* was used was not multiplicious); *United States v. Turner*, 17 M.J. 997 (A.C.M.R.1984) (two rapes and an attempted sodomy committed on the same victim a few minutes and a short distance apart were not multiplicious); *United States v. Ennis*, 15 M.J. 970 (A.C.M.R.1983) (forty-one specifications of tire slashing on different cars the same night were not multiplicious); *United States v. Zeigler*, 14 M.J. 860 (A.C.M.R. 1982) (two separate rapes on same victim not multiplicious); *United States v. Dearman*, 7 M.J. 713 (A.C.M.R.1979) (two rapes within the span of a few minutes on the same victim were separately punishable); *United States v. Wenz*, 1 M.J. 1030 (N.C.M.R.1976), *pet. denied*, 2 M.J. 228 (C.M.A.1977). It was reasonable for the government to charge the offenses by year and by location. Accordingly, we hold that the military judge did not err in determining that the offenses were not multiplicious for any purpose.

IV. Challenges for Cause

The appellant alleges that the military judge erred by denying challenges for cause against two court members, Colonel (COL) Rose and Chief Warrant Officer Four (CW4) Day.

■ Colonel Rose informed the military judge that as a special court-martial convening authority, he occasionally received legal advice from the trial counsel. During voir dire, the military judge and COL Rose had the following exchange:

MJ: You understand of course, sir, that his [trial counsel's] role as an advocate in this proceeding differs from his role as a legal advisor to you?

COL ROSE: I do understand.

MJ: And can you put aside the fact that he is your legal advisor, and listen to the evidence in this case, and my instructions to make a determination?

COL ROSE: Yes.

MJ: Okay. And would you be able to make a determination in the case—well let me rephrase. You wouldn't necessarily believe his case any more than the defense's case solely because of his relationship to you as a legal advisor?

COL ROSE: That's correct.

The civilian trial defense counsel did not ask any further questions of COL Rose. This Court has determined that the challenge to a court-martial member who was a special court-martial convening authority with a close professional relationship with the trial counsel was properly denied where no actual or implied bias was shown. *United States v. Mitchell*, 11 M.J. 907 (A.C.M.R.1981). The circumstances are the same in this case. There was a professional relationship of convening authority to legal advisor, but no actual or implied bias was shown. Accordingly, the military judge did not err in denying the challenge for cause against COL Rose.

CW4 Day stated during voir dire that he had recently seen on Armed Forces Network (AFN) television a "48 Hours" program on child abuse. He did not recall whether any of the specific instances were based on false accusations. It was agreed, however, that at least one instance was about a false accusation of child abuse. The appellant alleged that CW4 Day's ina-

bility to recall the instance of false accusation made him predisposed against a defense of false accusation. The military judge denied the causal challenge. The civilian trial defense counsel then challenged CW4 Day peremptorily.

■ When a challenge for cause is denied and the appellant uses his peremptory challenge against that member, his challenge for cause is waived unless he states that he would have used his peremptory challenge against another member except for the denial of the challenge for cause. R.C.M. 912(f)(4); *United States v. Jobson,* 31 M.J. 117 (C.M.A.1990). Since the appellant did not preserve his challenge for cause against CW4 Day, we hold that the challenge is waived.

## V. Ineffective Counsel

The appellant alleges that his civilian trial defense counsel was ineffective because his counsel was not prepared and did not call two crucial defense witnesses, Chaplain Mize and Mrs. M; failed to object to the admissibility of the videotape of the sexual activities of the appellant and his wife; failed to cross-examine the appellant's commanding officer, Major (MAJ) Becker, who testified on the appellant's lack of credibility; did not move to sever the offense involving Ms. Cogdill and the adultery from the offenses with Staci; and, did not adequately represent the appellant during the sentencing portion of the trial.

Government appellate counsel, attempting to comply with *United States v. Burdine,* 29 M.J. 834 (A.C.M.R.1989), requested that the civilian trial defense counsel, Mr. John Nolan, provide this Court an affidavit to answer the specific allegations of ineffectiveness raised by his client. Mr. Nolan refused to provide such an affidavit. This Court, on 4 August 1992, ordered Mr. Nolan to provide the required affidavit. Again, Mr. Nolan refused and there is no response from him for this Court to use to resolve the appellant's assertions of ineffective counsel. We will, therefore, examine each assertion of ineffectiveness based on the information provided by the appellant and the record of trial and fair inferences drawn therefrom, with due deference to counsel's tactical judgment, where such judgment is at all apparent. *United States v. Holt,* 33 M.J. 400, n. 10 (C.M.A.1991).

■ The standard for measuring claims of ineffectiveness of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard has been adopted for courts-martial. *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). Under *Strickland,* the appellant must first show that his defense counsel's performance was deficient, and second, the deficient performance prejudiced the defense so as to deprive the appellant of a fair trial. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Scott,* 24 M.J. at 188. A reviewing court will not second guess a counsel's action unless there is no realistic or tactical basis for it. *United States v. Rivas,* 3 M.J. 282 (C.M.A.1977). The inadequacy must be a serious incompetency that falls measurably below the performance ordinarily expected of fallible lawyers. *United States v. DiCupe,* 21 M.J. 440, 442 (C.M.A.1986) (citing *United States v. DeCoster,* 624 F.2d 196, 208 (D.C.Cir.1976) (*en banc*)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

The first assertion of ineffectiveness is that Mr. Nolan failed to call two defense witnesses. The first was Chaplain Mize who had counseled both of the Inghams. Mr. Nolan had talked to the chaplain five months prior to trial, but did not make a request to have the chaplain made available for trial until the day before trial. By that time, the chaplain had been reassigned to San Francisco, California.

■ The military judge correctly ruled that Chaplain Mize was not qualified to testify as to Colleen Ingham's psychiatric condition. He further ruled that his testimony on her believability under oath or her

manipulative personality was not material to the defense case. He also determined that the request for the witness was too late. We find that the failure of the civilian trial defense counsel to make prior arrangements for the chaplain to testify did not prejudice the appellant's case. The chaplain's testimony would not have been admissible even if he had been available to testify.

■ The second witness was Mrs. M, the woman with whom the appellant was alleged to have committed adultery. At the Article 32, UCMJ, hearing, Mrs. M testified that she did not have a sexual relationship with the appellant, but that they did spend a great deal of time together when her husband was not around. It is reasonable to draw an inference that her testimony at trial and the photographs which were found in the appellant's car trunk of Mrs. M in sexually provocative poses would not have helped the appellant given these facts. We find that there was a realistic or tactical basis not to call Mrs. M as a defense witness.

■ The next assertion of ineffectiveness is for the failure to object to the introduction into evidence of the videotape. The appellant was charged with indecent liberties with Staci for showing her the videotape. Staci was shown approximately forty seconds of the tape at trial to identify it as the one shown to her by the appellant. Once she identified the videotape, it was material, relevant, and appropriate for the fact finder to view to determine if showing the tape to a child under age sixteen constituted indecent liberties. We find that there was no reasonable basis for objecting to the admissibility of the tape.

■ The third assertion is that Mr. Nolan failed to cross-examine the appellant's commander, MAJ Becker, who testified that he would not believe the appellant under oath. Mr. Nolan did not question MAJ Becker as to the underlying reason for his opinion. An inference can be drawn that he did not question further for fear that the answer would be more damaging than already stated. Again, we find it was reasonable for Mr. Nolan not to cross-examine MAJ Becker.

■ The fourth assertion of ineffective assistance of counsel is that Mr. Nolan did not move to sever the charges pertaining to Ms. Cogdill and the adultery with Mrs. M from the sexual offenses against Staci. All known charges ordinarily will be tried at a single court-martial and that joinder of unrelated offenses alone is not sufficient to sever offenses. R.C.M. 906(b)(10) discussion. It is appropriate to try all the known offenses against the appellant and we find the failure to object to the joinder was not a deficient action by Mr. Nolan.

■ The fifth assertion of ineffectiveness of counsel is that Mr. Nolan did not adequately represent the appellant during the sentencing portion of the trial. While Mr. Nolan did not present any witnesses, he did present voluminous documentary evidence of the appellant's superior work performance and certificates of merit and achievement and award of medals for duty performance. Again, we find that Mr. Nolan's performance at the sentencing portion of the trial was adequate.

We find that the appellant has not met the burden to overcome the presumption of adequate performance by his trial defense counsel and hold that the total performance of Mr. Nolan met the strict requirements of *Strickland* and *Scott*. However, this does not end the matter. Mr. Nolan was ordered by this Court to provide an affidavit concerning his performance at trial. He deliberately defied a legitimate order of this Court. We have referred his actions to The Judge Advocate General of the Army and recommended that Mr. Nolan's certification to appear before military courts-martial under Article 27, UCMJ, be revoked and his state bar licensing authority be notified.

## VI. Sentence Appropriateness

■ The appellant asserts that his sentence is too severe for the offenses of which he has been found guilty. The appellant sodomized a child repeatedly over almost two years. He did not do this infrequently, but repeatedly many times a

month. He also violated his marital oath with another woman. We find that his sentence to confinement for forty years is appropriate for the findings of guilty.

We have carefully considered the issues raised personally by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge GRAY and Judge GONZALES concur.