UNITED STATES

v.

**Senior Airman Andre C. JACKSON, FR310–78–4568, United States Air Force.**

**ACM 32252.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 5 June 1996.

Decided 12 Feb. 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Major Ormond R. Fodrea, and Major Carol L. Hubbard.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Major Allen G. Erickson.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges

OPINION OF THE COURT

MORGAN, C.H., II, Judge:

A military judge sitting alone as a general court-martial convicted appellant, following mixed pleas, of unlawful use of cocaine, a three-day unauthorized absence, and using his government American Express Card for personal purposes. Appellant was sentenced to a bad-conduct discharge, confinement for 7 months, total forfeitures, and reduction to the lowest enlisted grade, airman basic. The record of trial is now before us to consider five assignments of error. First, appellant asserts that the judge erred by refusing to suppress his confession and subsequent positive urinalysis, arguing they were derived from a privileged self-identification, protected by Air Force Instruction (AFI) 36–2701, *Social Actions Program* (15 Aug. 94). Second, appellant alleges that the military judge's failure to note a discrepancy in his Personal Data Sheet (PDS) which did not reflect 62 days of pretrial restriction to base was plain error. Third, appellant avers that the Staff Judge Advocate's Recommendation also omitted reference to pretrial restrictions, and failed to accurately set forth appellant's foreign service. Fourth, appellant declares that his counsel were incompetent. And finally, appellant states that the amendments to the Uniform Code of Military Justice (UCMJ) worked to impose an *ex post facto* punishment on him in violation of the constitutional prohibition against such laws. We resolve all five assignments of error adversely to appellant and affirm.

*Background*

On Friday, March 1, 1996, appellant called his supervisor and said that he would be several hours late for work. He failed to show at all, and by the next day, his squadron first sergeant declared him to be absent without leave (AWOL). He was picked up by security police when he tried to enter the base in a rental car on Sunday, March 3, 1996, at approximately 1100 hours.

A security police investigator, Staff Sergeant (SSgt) Davidson, who picked up appellant at the main gate to the base, noticed the odor of what he believed to be marijuana emanating from the appellant and a civilian friend who had accompanied appellant on base[1]. Once the two were in separate rooms, SSgt Davidson continued to smell what he believed to be marijuana coming from the room in which appellant was seated alone. He called for a drug detection dog to be brought in. The dog, Wodan, alerted at the door to the room in which the appellant sat. Davidson told appellant that he had smelled marijuana on his person, and that the dog had alerted on the room, and asked if he would consent to a search of the rental car. When appellant granted consent, he accompanied SSgt Davidson along with Wodan and his handler to the car for the search. That search revealed nothing incriminating, but Wodan continued to show "interest" in appellant's person.[2]

After the search of the rental car, SSgt Jackson and the appellant returned to the Security Police building to "close out" appellant's statement. When asked, however, if

---

**1.** The friend, a Mr. Watkins, had several outstanding warrants against him in downtown Little Rock, Arkansas, and volunteered that he had just recently been smoking marijuana.

**2.** The facts recited herein come from the facts stipulated by the parties during trial and affidavits submitted with appellant's motion at trial. Over the government's objection, we accepted an unattested declaration from appellant which attempted to introduce new facts bearing on this issue, including, for the first time, the allegation

that SSgt Davidson told appellant that "he also believed that 'I was not' the one who smelled like marijuana...." That we may accept such a declaration for whatever it might be worth does not mean that we have abandoned fundamental rules of appellate practice, or that we are bound to consider new facts offered in an effort to supplement the record as to a matter for which there was a full and fair opportunity to present evidence at trial. *United States v. Rust*, 41 M.J. 472, 479 n. 3 (1995).

there were anything he cared to add, appellant asked to see his first sergeant, who had been at the SP building for quite some time, was aware of the allegation of the smell of marijuana and Wodan's alert, and who had witnessed the car search. When the first sergeant stopped by and leaned into the doorway, appellant told the first sergeant that he had "a big drug problem," that the whole thing (his statement) was a lie, and that the real reason he'd been AWOL was because he had been using cocaine all weekend. The first sergeant, inexplicably, told him to "stop," that he was "under rights advisement," and that he would have to report appellant's admission to the security police. Undeterred, appellant continued until the first sergeant left the room and reported what he had just heard to the security police.

Alerted to appellant's disclosures, SSgt Davidson called the Air Force Office of Special Investigations, who responded. Special Agent (SA) Appleby related that appellant, after being readvised of his rights (adding that he was suspected of unlawful use of controlled substances), elaborated on his story. He told SA Appleby that he had spent $1300 over the weekend on cocaine, and that he'd had a $40 per day habit since November of 1995. A probable cause urinalysis was ordered, and appellant's urine tested positive, containing over 233,000 nanograms per milliliter of cocaine metabolite, considerably over the 100 ng/ml DoD threshold.

## I. Motion to Suppress Privileged Disclosure

■ AFI 36–2701, paragraph 5.5.1.1.2, prohibits use of a "voluntary disclosure of substance abuse" in any action under the UCMJ. A "voluntary disclosure" is "when an Air Force member seeks assistance and voluntarily discloses evidence of personal drug use or possession to the unit commander, first sergeant, Social Actions, or a designated military medical authority." AFI 36–2701, paragraph 5.5.1.1. A disclosure is not voluntary if the discloser has been "placed under investigation for drug abuse (that is, when a Security Police blotter in [*sic*] the Security Police Investigator's Log of Cases

shows an initial case entry or Office of Special Investigation (OSI) opens a case file.)" AFI 36–2701, paragraph 5.5.1.2. The explanatory parenthetical expression forms the heart and soul of appellant's argument. Read restrictively, as appellant urges, it would mean that almost any "investigation" which had not (yet) been documented in the fashion described above, could be effectively short-circuited. It would mean any canny suspect, schooled by the ubiquitous barracks lawyers, has but to chant the mantra of self-identification before the net closes about him. What's more, under his interpretation, any state or local investigation, or one undertaken by a foreign police authority, or indeed any investigation at all other than one which has already been undertaken and documented by the security police or AFOSI, would not qualify.

We are unwilling to ascribe such an absurd intention to the drafters of the instruction, or to assume that the examples enclosed in parentheses are meant to be exclusive. To be sure, the instruction, or at least that portion at issue here, could stand an organizational overhaul and more precise draftsmanship. The parenthetical expression which purports to illuminate what is meant by "placed under investigation for drug abuse" not only fails in its purpose, but gratuitously obscures the meaning of what might easily be entrusted to the common sense of the reader. Attaching litmus-like legal significance to the timing of a ministerial, *post hoc* entry into a blotter not only contravenes basic principles of legal draftsmanship, it defies reason. The military judge correctly discerned that the real issue was whether appellant was actually under investigation for drug abuse, and not whether the security police beat him to the punch by hastily scribbling an entry in the blotter. In his findings he stated:

> I am convinced that, although no magic words had been spoken to say that the accused was under apprehension for drug involvement, and no entries had been made in a log showing a case had formally been opened, the accused was actually under investigation and apprehension was imminent when he made his "disclosure."

We also find no abuse of discretion in the military judge's finding that appellant was under investigation at the time of his disclosure. We specifically decline appellant's invitation to lend our imprimatur to a wooden reading of AFI 36–2701. In doing so, we are not unmindful of the dictum concerning investigations in *United States v. Alexander*, 26 M.J. 988, 990 (A.F.C.M.R.1988) to which appellant draws our attention.[3] But understood in proper context, the referenced quotation does no more than rehearse similar language taken from the predecessor regulation to AFI 36–2701. Contrary to appellant's assertion, we did not specifically hold that an investigation is not an investigation unless it is first entered in a blotter or log book. We were careful to explain that, by *any* definition, Alexander was not the subject of a drug investigation at the time that he went to his first sergeant, on his own, and disclosed that he had a drug problem and needed help. Appellant, on the other hand, was.

It is also uncertain whether even appellant thought he was making a disclosure within the ambit of AFR 36–2701. We deem it important that nobody who witnessed the sequence of events on March 3, least of all appellant, contemporaneously behaved consistent with such an understanding. Neither did anybody's actions following appellant's confession comport with such a belief. On the contrary, appellant's first sergeant tried to hush him up, reminding him, in essence, that he was under investigation. *Cf. United States v. Wakin*, 27 M.J. 532, 534 (A.F.C.M.R.1988) (commander specifically denied that "any form of investigation" was ongoing at the time of Wakin's disclosure.)

We hold, therefore, that the relevant question to be decided by the military judge is whether there was *actually* an investigation into possible drug abuse ongoing at the time an accused makes admissions which are arguably within the coverage of the privilege.

On that basis, based upon the undisputed facts available to the military judge at trial, he did not abuse his discretion in deciding that appellant was under investigation for drug abuse at the time he made his first revelation to his first sergeant. Accordingly, we reject this assignment of error.

## II. Military Judge's Failure to Note Duration and Nature of Pretrial Restraint

■ The PDS on appellant inaccurately failed to note his overseas service in Korea, and showed no pretrial restraint. The charge sheet correctly noted that appellant had been in pretrial restriction beginning March 11, 1996.[4] Appellant seeks to impose a duty on the military judge to personally and independently verify the accuracy of the PDS, thereby relieving his counsel and him of that obligation. There is reason behind the trial procedure, long approved, whereby the military judge asks if there are any objections or corrections to the PDS. In this case, before the military judge could ask, defense counsel, having reviewed the PDS on the record, declared that he had no objection. Thus, appellant waived the issue in the absence of plain error. R.C.M. 1001(b)(1). We do not find plain error here, because it is quite clear that defense counsel was aware of the pretrial restriction, since he employed it in argument as a matter in mitigation, thereby bringing it to the attention of the military judge. Consequently, there was no prejudice at all accruing from the erroneous PDS.

## III. Inaccurate Staff Judge Advocate Recommendation

■ The error in the PDS persisted through the post-trial processing of the record. The staff judge advocate's recommendation (SJAR) had attached to it the same erroneous PDS which had been admitted at

---

**3.** "[A] member is considered under investigation for drug abuse only when the appropriate initial case entry is made in a Security Police blotter or in the Security Police Investigator's Log of cases, or when the commander has requested an investigation according to AFR 124–4." By that definition, even an AFOSI investigation would not qualify, much less one undertaken by state or local authority.

**4.** According to the Article 32 investigation, appellant was restricted to Little Rock Air Force Base (AFB) March 11 through March 24, 1996, then again from April 19 until the time of trial, for a total of 62 days.

trial. Appellant makes the same argument as he did in issue II, above, and we resolve it the same way. *See* R.C.M. 1106(f)(6). The omission was (self-evidently) neither obvious nor substantial, nor did it amount to a miscarriage of justice. *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *Cf. United States v. Demerse,* 37 M.J. 488 (C.M.A.1993).

### IV. Ineffective Assistance of Counsel During Sentencing Phase of Trial

Possibly anticipating the unfavorable resolution of issues II and III above on the principle of forfeiture, appellant attacks his counsel for ineffectiveness. Specifically, he complains of the failure of his counsel to correct the errors in the Personal Data Sheet and to "adequately address the appellant's pretrial restraint." Even though appellant's posttrial declaration hints at the possibility of illegal pretrial punishment, or restriction tantamount to confinement, those cues are not taken in appellant's brief. At trial, the circuit defense counsel expressly denied that the nature of appellant's pretrial restraint was unlawful or that it might somehow qualify for sentencing credit.

■ What appellant's arguments devolve to is that his two counsel, the area defense counsel and circuit defense counsel, could have and should have put on a stronger sentencing case. Appellate defense counsel highlights the alleged failure to put on evidence that appellant had been selected as airman of the quarter while at Osan Air Base and again while on temporary duty at Dharan Air Base in Saudi Arabia. These two honors were first disclosed through appellant's letter to the convening authority during clemency. No documentary evidence substantiating these honors is contained anywhere in the record and we will not speculate as to their availability to the trial defense counsel. Not only were all of appellant's enlisted performance reports, which were generally quite positive, presented for the judge's consideration, but appellant presented two unsworn statements, one written and one oral. The written unsworn statement is a powerful, moving tale of a brutal and bru-

talizing childhood. It dovetailed neatly with the defense strategy during sentencing to show how appellant had surmounted seemingly insuperable odds to come as far as he had, and deserved another chance. The defense also put on the favorable testimony of his squadron first sergeant, something rarely seen in drug offenses. None of the alleged oversights in appellant's brief, either individually or cumulatively, approaches the kind of incompetence as to impinge on the 6th Amendment right to counsel, much less has appellant shown the extreme prejudice required to clear the high standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), or *United States v. Ingham,* 42 M.J. 218 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996).

### V. Change to Article 57, UCMJ, Violates Ex Post Facto Clause of Constitution

■ Last, appellant complains that the February, 1996, amendments to Article 57 of the UCMJ, 10 U.S.C. § 857, which directs the execution of forfeitures and a reduction to the earlier of the convening authority's action or 14 days after announcement of sentence, amounts to an *ex post facto* punishment. This issue has been decided adversely to appellant in *United States v. Pedrazoli,* 45 M.J. 567 (A.F.Ct.Crim.App. 1997).

### Conclusion

We find no error prejudicing the substantial rights of appellant. The findings and sentence are correct in law and in fact, the sentence is appropriate, and the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.